FILED
2015 Oct-27  PM 03:44
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| KENDRALIA KRETZSCHMAR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:14-cv-02207-JEO |
| | ) | |
| BIRMINGHAM NURSING AND | ) | |
| REHABILITATION CENTER EAST, | ) | |
| LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

In this action, plaintiff Kendralia Kretzschmar has asserted a variety of

employment-related claims against her former employer, defendant Birmingham

Nursing and Rehabilitation Center East, LLC ("Birmingham East").  Before the

court is Birmingham East's motion to dismiss Kretzschmar's amended complaint.

(Doc.[1] 7).  For the reasons set forth below, Birmingham East's motion to dismiss is

due to be granted in part and denied in part.

## PROCEDURAL HISTORY

Kretzschmar initially filed this action against Birmingham East and its

Executive Director, Melody Burch.  (Doc. 1).  In Kretzschmar's original

---

[1] References to "Doc. __" are to the document numbers assigned by the Clerk of the Court to the pleadings, motions, and other materials in the court file, as reflected on the docket sheet in the court's Case Management/Electronic Case Files (CM/ECF) system.

complaint, she cited a litany of  federal employment law statutes: Title VII of the

Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*, as amended

(including 42 U.S.C. § 2000e-5(b)); the Americans with Disabilities Act ("ADA"),

42 U.S.C. §§ 12101 *et seq.*; 42 U.S.C. § 1981 ("Section 1981"); 42 U.S.C. §

1981a;  42 U.S.C. § 1983 ("Section 1983"); the Age Discrimination in

Employment Act ("ADEA"), 29 U.S.C. §§ 626 *et seq.*; and the Fair Labor

Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* (Doc. 1 at ¶ 1).  She did not

state her claims in separate counts, but rather lumped all of her claims into a single

paragraph that accused Birmingham East and Burch of discriminating and

retaliating against her with respect to "job duties, and assignments, job evaluations,

pay, working conditions, hiring, promotion, hostile work environment, discipline,

and other terms and conditions of employment" in violation of all of the statutes

she had cited.  (Doc. 1 at ¶ 20).

     Birmingham East and Burch filed a motion to dismiss the complaint for

insufficiency of service of process under Rule 12(b)(5) of the Federal Rules of

Civil Procedure and failure to state a claim upon which relief may be granted under

Rule 12(b)(6).  (Doc. 7).   Kretzschmar filed an opposition to the motion to

dismiss, which included a request for an extension of time to perfect service of

process on both Birmingham East and Burch.  (Doc. 15 at 5-6).

Kretzschmar also filed a motion for leave to file an amended complaint. (Doc. 16).  The motion included a proposed amended complaint that named Birmingham East as the only defendant.  (Doc. 16 at 5-14).   In the opening sentence of her proposed amended complaint, Kretzschmar again cited Title VII, the ADA, Section 1981, 42 U.S.C. § 1981a, the ADEA, and the FLSA.[2]  (*Id.* at ¶ 1).  Unlike her original complaint, however, her proposed amended complaint was divided into four counts, none of which referenced the ADA, the ADEA, or the FLSA.  (*Id.* at ¶¶ 28-50).

Birmingham East and Burch replied to Kretzschmar's opposition to their motion to dismiss and opposed her motion for leave to file an amended complaint. (Doc. 17).  In the reply, Birmingham East acknowledged that, subsequent to the filing of Kretzschmar's opposition to the motion to dismiss, she effected proper service on Birmingham East.  (Doc. 17 at 3 n.2).   Consequently, Birmingham East withdrew its argument that the complaint should be dismissed for insufficiency of service of process, while arguing that the complaint should still be dismissed for failure to state a claim.  (*Id.*)  Burch, on the other hand, continued to contest service and continued to assert both grounds for dismissal of the complaint as to her.  She also noted that Kretzschmar's proposed amended complaint identified Birmingham East as the sole defendant, making it unclear whether Kretzschmar

---

[2] The proposed amended complaint did not reference Section 1983.

intended to continue to pursue any claims against her.  (Doc. 17 at 3 n.3).

Birmingham East and Burch also opposed Kretzschmar's motion to file her

proposed amended complaint, asserting that the proposed amended complaint

contained many of the same defects as her original complaint and raised new

claims, including a termination claim.  (Doc. 17 at 9-10).

In light of the uncertainty as to whether Kretzschmar intended to pursue her

action against Burch, the court held a telephone conference with the parties.  Based

on Kretzschmar's representation that she did not intend to pursue any claims

against Burch as reflected in her proposed amended complaint, the court granted

Kretzschmar's motion to file the amended complaint and noted that Burch was no

longer a defendant.  (Doc. 26).  The court also advised the parties that the pending

motion to dismiss would be taken under submission and would be treated as a

motion to dismiss the claims in Kretzschmar's amended complaint against

Birmingham East, based on the parties' representations that the motion to dismiss

had been fully briefed, that they had no additional arguments to submit with

respect to the amended complaint, and that the motion to dismiss was ripe for

decision as to the amended complaint.  (*Id.*)

Nearly one month later, Kretzschmar filed her amended complaint (the

"Amended Complaint").  (Doc. 28).  Although the Amended Complaint is

substantially similar to the proposed amended complaint Kretzschmar attached to

her motion, it differs from her proposed amended complaint (and her original complaint) in one significant respect: whereas Kretzschmar's proposed amended complaint (and original complaint) referenced a single charge of discrimination filed with the Equal Employment Opportunity Commission ("EEOC"), the Amended Complaint references both an "individual" EEOC charge and an "amended" EEOC charge.  (Doc. 28 at ¶ 5).  Consequently, the court held a second telephone conference with the parties.  During the call, Kretzschmar's counsel admitted that she was unsure whether Kretzschmar had, in fact, filed an amended EEOC charge.  The court directed Kretzschmar's counsel to clear up the matter and to file a notice confirming whether an amended charge had or had not been filed.  (Doc. 30).  The court also asked Kretzschmar's counsel whether Kretzschmar had abandoned her claims based on the ADA, the ADEA, and the FLSA, as her Amended Complaint did not appear to state any claims for relief under those statutes.  Kretzschmar's counsel confirmed that Kretzschmar is not asserting any claims under the ADA, the ADEA, or the FLSA.  (*See id.*).  As directed, Kretzschmar's counsel subsequently filed a notice affirming that Kretzschmar never filed an amended EEOC charge.  (Doc. 31).

## STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted challenges the sufficiency of the claim(s) set out in the

5

plaintiff's pleadings.  *Harris v. Proctor & Gamble Cellulose Co.*, 73 F.3d 321, 324 (11th Cir. 1996).  A complaint attacked by a Rule 12(b)(6) motion need not contain "detailed factual allegations," but "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  To survive a motion to dismiss, a complaint must contain "only enough facts to state a claim to relief that is plausible on its face."  *Id.* at 570.  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Speaker v. U.S. Dep't of Health & Human Servs.*, 623 F.3d 1371, 1380 (11th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)).  When ruling on a motion to dismiss, the court must accept the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff.  *Speaker*, 623 F.3d at 1379.

## FACTS AS ALLEGED IN THE AMENDED COMPLAINT

Kretzschmar, an African-American female, began working at Birmingham East in June 2012 as "MDS Coordinator."[3]  On June 13, 2013, she was promoted to the position of Assistant Director of Nursing and was asked to perform the duties of Director of Nursing on an interim basis.

---

[3]The Amended Complaint provides no information regarding the MDS Coordinator position.

6

The following month, Kretzschmar was accused of creating a racially hostile work environment at Birmingham East, an accusation that she denies. On July 11, 2013, Burch, a white female, placed Kretzschmar on administrative leave without pay for five days and advised Kretzschmar that she was being demoted to her prior position of MDS Coordinator. Kretzschmar went to Birmingham East's Human Resources Department and filed a "verbal complaint" of discriminatory treatment against Burch. Kretzschmar alleged that Burch demoted her because of her race.

According to Kretzschmar, after she filed her complaint against Burch, "the office became unbearable. … Burch was constantly telling [her] that she had an attitude, [and] constantly trying to find reasons to write her up. [She] was scrutinized constantly and denied her much earned vacation." (Doc. 28 at ¶ 22).

On August 28, 2013, Kretzschmar filed a charge of discrimination with the EEOC against Birmingham East.[4] In her EEOC charge, Kretzschmar checked the box for discrimination based on "race" and stated as follows:

> I am a Black female. I was hired as the MDS Coordinator for the above named employer in July of 2012. I performed my job in an exemplary manner. In June of 2013, I was asked to perform the duties of interim Director of Nursing until a permanent replacement was found for the previous Director of Nursing. I was told that once the permanent position was filled, I would be placed in the position of Assistant Director of Nursing. I moved into the office and began performing the duties as the Director of Nursing. In or about July of

---

[4]Kretzschmar filed a copy of her EEOC charge along with her original complaint. (Doc. 1-2 at 3).

2013, I received an unfavorable text message from a co-worker concerning my placement in the interim position.  I responded to the text message; however, my response was not received as I intended.  I was told by the Executive Director, Melody Burch that I was creating a racially hostile work environment and I was being suspended pending an investigation.  Prior to my suspension, my personal belongings were moved from my office without any regard to their importance.  When I returned to work, I was placed in the position that I originally occupied and my pay was reduced.  I am aware that Amanda Galliot, White, was suspended for making racially motivated statements and unlike me, received a promotion after she returned to work.

I believe that I have been discriminated against and subjected to different terms and conditions because of my race, Black in violation of Title VII of the Civil Rights Act of 1964, as amended.

(Doc. 1-2 at 3).

Birmingham East terminated Kretzschmar's employment in September 2013.  In November 2013, Birmingham East promoted a white female employee to the position of Assistant Director of Nursing.  Kretzschmar alleges that the white employee was "fresh out of nursing school" and had less experience than she had. (Doc. 28 at ¶¶ 16, 18).

On August 13, 2014, the EEOC issued a Dismissal and Notice of Rights with respect to Kretzschmar's charge of discrimination.  (Doc. 1-2 at 1). Kretzschmar filed this action on November 13, 2014.

## DISCUSSION

**A.    The Amended Complaint Does Not State any Claims for Relief Under the ADA, the ADEA, or the FLSA**

The opening sentence of Kretzschmar's Amended Complaint references Title VII, the ADA, Section 1981, 42 U.S.C. §1981a, the ADEA, and the FLSA.[5] (Doc. 28 at ¶ 1).  Her statement of facts, however, does not allege any facts that would give rise to a claim under the ADA, the ADEA, or the FLSA.  Kretzschmar does not allege that she is a person with a disability entitled to the protections of the ADA.  She does not allege that she is age 40 or over so as to come within the class of individuals protected under the ADEA.[6]  *See* 29 U.S.C. § 631(a).  And she does not allege that Birmingham East failed to pay her minimum wage or overtime so as to give rise to an FLSA claim.  *See* 29 U.S.C. §§ 206 & 207.   Moreover, none of the four counts of the Amended Complaint references the ADA, ADEA, or the FLSA, and Kretzschmar's counsel has represented to the court that Kretzschmar is not pursuing any claims under those statutes.  Accordingly, the court finds that the Amended Complaint does not state any claims for relief under the ADA, the ADEA, or the FLSA.

---

[5] Like her proposed amended complaint, the Amended Complaint does not reference Section 1983.

[6] Indeed, it appears from Kretzschmar's EEOC charge that she is under age 40.  (Doc. 1-2 at 3).

**B.      Kretzschmar's Claims for Violation of Title VII and Section 1981**

As noted, Kretzschmar's Amended Complaint is divided into four counts. Count One alleges race discrimination, Count Two alleges retaliatory discharge, Count Three alleges reprisal, and Count Four alleges a hostile and abusive work environment.  Although each count references only Title VII, Kretzschmar's "Prayer for Relief" requests the court to issue a declaratory judgment that Birmingham East's "policies, practices, procedures, conditions and customs" were violative of her rights as secured by both Title VII and Section 1981.[7]  (Doc. 28 at 9).  In addition, in the section of the Amended Complaint titled "Administrative Exhaustion," Kretzschmar cites Section 1981 and states that "[u]nder [42] U.S.C. Section 1981, there is no[ ] requirement that a Plaintiff first file a charge of discrimination with an administrative agency before commencing the lawsuit as long as the lawsuit is brought with[in] the four years from the violation of a protected activity."  (*Id.* at ¶ 7).  Therefore, despite Kretzschmar's failure to specifically cite Section 1981in any of her four counts, the court is satisfied that she intends to pursue her claims under both Title VII and Section 1981 and will construe her claims accordingly.  *See Albert v. Carovano*, 851 F.2d 561, 571 n.3 (2d Cir. 1988) ("The failure in a complaint to cite a statute, or to cite the correct

---

[7] The Prayer for Relief also references the ADA, but, as noted, Kretzschmar has alleged no facts that would support a claim under the ADA and her counsel has confirmed that she is not pursuing an ADA claim.

10

one, in no way affects the merits of a claim.  Factual allegations alone are what matters."); *Garrett v. Unum Life Ins. Co. of America*, 427 F. Supp. 2d 1158, 1161 (M.D. Ga. 2005) (citing *Albert*).

### 1.    Title VII and Section 1981 claims in general

#### a.    Title VII

Title VII prohibits employment discrimination against any individual with respect to his or her "compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).  It is well-settled that before an individual may pursue a Title VII discrimination claim, she must first exhaust her administrative remedies with the EEOC.  *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1317 (11th Cir. 2001).  "The first step down this path is filing a timely charge of discrimination with the EEOC."  *Id.* (citing 42 U.S.C. § 2000e-5(b) (1994)).  "To be timely within a non-deferral state, such as Alabama, it must be filed within 180 days of the last discriminatory act."  *Gray v. Vestavia Hills Bd. of Educ.*, 317 F. App'x 898, 902 (11th Cir. 2008) (citing 42 U.S.C. § 2000e–5(e)(1)).

The purpose of the exhaustion requirement is to allow the EEOC "the first opportunity to investigate the alleged discriminatory or retaliatory practices, and a plaintiff's judicial complaint is thereby limited by the scope of the investigation that can reasonably be expected to grow out of the administrative charge of

discrimination or retaliation." *Basel v. Sec'y of Defense*, 507 F. App'x 873, 875 (11th Cir. 2013) (citing *Gregory v. Georgia Dep't of Human Res.*, 355 F.3d 1277, 1279-80 (11th Cir. 2004)). "The proper inquiry is, therefore, whether the plaintiff's judicial complaint was like or related to, or grew out of, the administrative allegations. Judicial claims are allowed if they 'amplify, clarify, or more clearly focus' the charges made before the agency …." *Basel*, 507 F. App'x at 575-76 (citations omitted). While a plaintiff's Title VII complaint need not mirror her earlier EEOC charge, "allegations of new acts of discrimination that are offered as the essential basis for judicial review must nonetheless be presented to the agency." *Id.* at 576 (citing *Ray v. Freeman*, 626 F.2d 439, 442-43 (5th Cir. 1980)). Therefore, "[d]iscrete acts of discrimination that occur after an administrative filing must first be administratively reviewed before a plaintiff may obtain judicial review of those same acts." *Id.* Termination, failure to promote, denial of transfer, and refusal to hire are examples of discrete discriminatory acts that are "easy to identify." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002).

### b.    Section 1981

Section 1981 provides that all persons "shall have the same right … to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens …." 42 U.S.C. § 1981(a). The elements of a cause of

action under § 1981 are: "(1) that the plaintiff is a member of a racial minority; (2) that the defendant intended to discriminate on the basis of race; and (3) that the discrimination concerned one or more of the activities enumerated in the statute." *Kinnon v. Arcoub, Gopman & Assocs., Inc.,* 490 F.3d 886, 891 (11th Cir. 2007) (internal quotation marks omitted) (quoting *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1270 (11th Cir. 2004)).

Unlike Title VII claims, "[t]here are no administrative prerequisites to the maintenance of a § 1981 claim." *Caetio v. Spirit Coach, LLC*, 992 F. Supp. 2d 1199, 1209 (N.D. Ala. 2014). "Neither the filing of an EEOC charge of discrimination within 180 days of the alleged unlawful employment as required by Title VII …, nor 'resort to Title VII's administrative machinery are … prerequisites for the institution of a § 1981 claim.'" *Id.* (quoting *Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 460 (1975)).

### 2.    Race Discrimination

In Count One of her Amended Complaint, Kretzschmar alleges that she was "denied promotional [sic] opportunity and higher wages while less qualified and less senior Caucasian employees were promoted and paid higher wages" and that Birmingham East "implemented and executed a system that was meant to promote Caucasian employees and pay Caucasian employees higher wages while denying African American employees promotion and higher wages." (Doc. 28 at ¶¶ 31-32).

13

She alleges that as a consequence of Birmingham East's "unlawful conduct and practices" she has been deprived of "employment, benefits and other terms and conditions of employment based on her race."  (*Id.* at ¶ 33).

In Birmingham East's reply brief in support of its motion to dismiss, Birmingham East concedes that Kretzschmar has satisfied the *Iqbal/Twombly* pleading standards and exhausted her Title VII administrative remedies to the extent she is asserting a claim for race discrimination based on her suspension, demotion, and pay cut in July 2013.[8]  (Doc. 17. at 6, 8, 11).   However, to the extent that Kretzschmar is attempting to assert a race discrimination claim based on any other alleged adverse employment actions, Birmingham East disputes that Kretzschmar has satisfied the *Iqbal/Twombly* pleading standards or exhausted her Title VII administrative remedies.  (Doc. 8 at 19-20; Doc. 17 at 11).  Birmingham East specifically argues that Kretzschmar did not exhaust her Title VII remedies with respect to her allegations of discriminatory pay and promotion practices.  (Doc. 17 at 10).  Kretzschmar responds that the issues she has raised in her complaint are "reasonably related" to her EEOC charge with "no material

---

[8] Birmingham East's briefs were submitted before Kretzschmar filed her Amended Complaint. Consequently, the briefs do not address the separate counts of the Amended Complaint, but rather Kretzschmar's claims as stated in her original complaint.

differences."[9]  (Doc. 15 at 10).  She also notes that her claims are filed under Section 1981 as well as Title VII.  (*Id.* at 11).

The court agrees with Birmingham East that to the extent Kretzschmar is attempting to assert a race discrimination claim based on discriminatory pay and promotion practices, the claim is due to be dismissed.   Even construing the factual allegations in the Amended Complaint in the light most favorable to Kretzschmar, she has not alleged any adverse pay or promotion practices by Birmingham East. Indeed, her own allegations belie her assertion that she was denied "promotional opportunity and higher wages."  (Doc. 28 at ¶ 31).  According to her very own pleading, Birmingham East "promoted" her to the Assistant Director of Nursing Position.  (*Id.* at ¶ 13).  Her race discrimination claim is based on her subsequent suspension and demotion from that position, not on her failure to receive the promotion in the first place.  Simply put, the Amended Complaint contains no factual allegations that support Kretzschmar's contention that Birmingham East engaged in discriminatory pay and promotion practices.  She does not identify any promotion (with corresponding higher wages) that she—or any other African-American employee at Birmingham East—was denied, much less any promotion that was awarded to a less-qualified white employee.  She has failed to plead any

---

[9] Like Birmingham East's briefs, Kretzschmar's brief in opposition to the motion to dismiss discusses her claims as stated in her original complaint and not as repleaded in the Amended Complaint.

"factual content" that would allow the court to draw the "reasonable inference" that Birmingham East is liable for engaging in discriminatory pay and promotion practices. *Iqbal*, 556 U.S. at 678.

Likewise, Kretzschmar's EEOC charge says nothing about discriminatory pay and promotion practices by Birmingham East. The "particulars" of her EEOC charge are limited to her suspension, demotion, and pay reduction in July 2013; there is no allegation in the charge that she was denied any desired promotion because of her race. The allegation in her Amended Complaint that Birmingham East denied her opportunities for promotion and higher wages is not "like or related to" the allegations in her EEOC charge. *Basel*, 507 F. App'x at 875-76. Therefore, Kretzschmar failed to exhaust her administrative remedies to the extent she now seeks to bring a Title VII claim premised upon alleged discriminatory pay and promotion practices by Birmingham East.

Based on the foregoing, Birmingham East's motion to dismiss is due to be granted as to Count One of the Amended Complaint to the extent that Count One alleges a Title VII or Section 1981 claim for race discrimination based on alleged discriminatory pay or promotion practices by Birmingham East. The motion is due to be denied to the extent that Count One alleges a Title VII or Section 1981 race discrimination claim premised upon Kretzschmar's suspension, demotion, and pay reduction in July 2013. Kretzschmar may pursue both a Title VII claim and a

Section 1981 claim for race discrimination arising out of her suspension, demotion, and pay reduction, but may not pursue any such claims based on any other alleged discriminatory employment actions by Birmingham East.

### 3.    Retaliatory Discharge

In Count Two of her Amended Complaint, Kretzschmar alleges that "[her] employment was terminated in retaliation for her having complained about racial discrimination in violation of Title VII …." (Doc. 28 at ¶ 39). Birmingham East argues that the claim is due to be dismissed because Kretzschmar did not exhaust her administrative remedies. (Doc. 17 at 10). The court disagrees.

As previously noted, a Title VII claim is limited by the scope of the administrative investigation that could "reasonably be expected to grow out of" the plaintiff's EEOC charge. *Basel*, 507 F. App'x at 875. "[A] claim of retaliation could reasonably be expected to grow out of [an] original charge of discrimination." *Baker v. Buckeye Cellulose Corp.*, 856 F.2d 167, 169 (11th Cir. 1988). As a consequence,

> it is unnecessary for a plaintiff to exhaust administrative remedies prior to urging a retaliation claim growing out of an earlier charge; the district court has ancillary jurisdiction to hear such a claim when it grows out of an administrative charge that is properly before the court.
>
> There are strong practical reasons and policy justifications for this conclusion. It is the nature of retaliation claims that they arise after the filing of the EEOC charge. Requiring prior resort to the EEOC would mean that two charges would have to be filed in a retaliation

> case—a double filing that would serve no purpose except to create
> additional procedural technicalities when a single filing would comply
> with the intent of Title VII.

*Gupta v. East Texas State Univ.*, 654 F.2d 411, 414 (5th Cir. 1981) (citing *Held v. Missouri Pacific R.R. Co.*, 373 F. Supp. 996, 1001 (S.D. Tex. 1974), and *Nat'l Org. for Women v. Sperry Rand Corp.*, 457 F. Supp. 1338, 1344 (D. Conn. 1978)); *see also Thomas v. Miami Dade Pub. Health Trust*, 369 F. App'x 19, 23 (11th Cir. 2010) (citing *Gupta*).

Here, Kretzschmar's retaliatory discharge claim "grew out of" her EEOC charge; she alleges that she was terminated in retaliation for having filed the charge. Therefore, it was not necessary for her to file a second charge in order to pursue a retaliatory discharge claim under Title VII. *See Caetio*, 992 F. Supp. 2d at 1212 ("Because Caetio alleges that defendant retaliated against her ... for filing an EEOC discrimination charge, her retaliation claim 'grew out of' that charge. Thus, Caetio was under no obligation to file a separate EEOC charge in order to maintain a retaliation action in compliance with Title VII.").

In addition, as noted above, Kretzschmar is pursuing the claims in her Amended Complaint under Section 1981 as well as Title VII, and there are no administrative prerequisites to the maintenance of a Section 1981 claim. Therefore, Kretzschmar may pursue her retaliatory discharge claim under both Title VII and Section 1981. Birmingham East's motion to dismiss is due to be

denied as to Count Two of the Amended Complaint.

### 4.    Reprisal

Although titled "Reprisal," Count Three of the Amended Complaint appears to be asserting another retaliation claim.  In Count Three, which incorporates the preceding paragraphs of the Amended Complaint by reference, Kretzschmar alleges that Birmingham East's "conduct as alleged above constitutes retaliation against [her] because she engaged in activities protected by Title VII."  (Doc. 28 at ¶ 48).  Kretzschmar does not specify what particular "conduct as alleged above" was retaliatory.  To the extent that the "conduct as described above" includes her termination, Birmingham East's motion to dismiss is due to be denied for the reasons discussed above with respect to Count Two.

However, to the extent that Birmingham East's "conduct as described above" includes alleged retaliatory acts commencing before Kretzschmar filed her EEOC charge, the court agrees with Birmingham East that Kretzschmar is precluded from pursuing a Title VII retaliation claim because she failed to exhaust her administrative remedies.  Kretzschmar filed her EEOC charge on August 28, 2013, more than a month after she filed her "verbal complaint" against Burch with Birmingham East's Human Resources Department.  (Doc. 1-2 at 3; Doc. 28 at ¶ 17).  She did not check the box for "retaliation" on her EEOC charge and the word "retaliation" does not appear anywhere in her description of the particulars of her

charge.  Nowhere in her EEOC charge does she even suggest that Burch (or anyone else at Birmingham East) retaliated against her for reporting alleged discriminatory treatment.  Consequently, to the extent that Kretzschmar seeks to pursue a retaliation claim under Title VII based on acts commencing before she filed her EEOC charge, the claims are due to be dismissed for failure to exhaust administrative remedies.

Kretzschmar may, however, pursue such a retaliation claim under Section 1981.  Despite Kretzschmar's failure to specify the particular "conduct as described above" that she claims was retaliatory, the court is satisfied that she has alleged sufficient facts to state a plausible Section 1981 retaliation claim encompassing more than just her termination.  She alleges that after she reported Burch's alleged acts of discrimination, her employment at Birmingham East became unbearable, she was scrutinized constantly, and she was denied earned vacation.  (Doc. 28 at ¶ 22).  Accepting these allegations as true and construing them in the light most favorable to Kretzschmar, she has adequately pleaded a retaliation claim under Section 1981 to survive Birmingham East's motion to dismiss.

Based on the foregoing, Birmingham East's motion to dismiss is due to be granted to the extent that the retaliation claim in Count Three is brought pursuant to Title VII and is based on alleged retaliatory acts commencing before

Kretzschmar filed her EEOC charge.  The motion to dismiss is otherwise due to be denied as to Count Three.

**5.**      **Hostile Work Environment**

In Count Four, which incorporates all of the preceding paragraphs of the Amended Complaint by reference, Kretzschmar alleges that Birmingham East's "conduct as described above constitutes [a] hostile and abusive working environment in violation of Title VII."  (Doc. 28 at 49).  Again, she does not specify what particular "conduct as described above" created the alleged hostile work environment.  Birmingham East argues that the hostile work environment claim should be dismissed because, once again, Kretzschmar failed to exhaust her Title VII administrative remedies and because she has failed to satisfy the *Iqbal/Twombly* pleading standards.  (Doc. 17 at 10).  As before, Kretzschmar asserts that the issues in her complaint are "reasonably related" to her EEOC charge with "no material differences," and notes that her claims have been brought pursuant to Section 1981 as well as Title VII.  (Doc. 15 at 10-11).  She also argues that "the complaint gives rise to a reasonable inference that [she] was discriminated against, and retaliated against and exposed by those means to a hostile work environment thus satisfying [a] prima facie case 'post *Twombly*.'"  (*Id.* at 10).

The court agrees with Birmingham East that Kretzschmar failed to exhaust her administrative remedies with respect to her hostile work environment claim.  A hostile work environment claim is materially different from a claim that Kretzschmar was suspended and demoted (with a corresponding reduction in pay) in July 2013 because of her race, which is all her EEOC charge alleges.  *See McCann v. Tillman*, 526 F.3d 1370, 1378 (11th Cir. 2008) ("As opposed to '[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal to hire,' a hostile work environment claim addresses acts 'different in kind' whose 'very nature involves repeated conduct,' such as ' "discriminatory intimidation, ridicule, and insult." ' ") (quoting *Morgan*, 536 U.S. at 114-16).  Nowhere in her EEOC charge does Kretzschmar state that she was subjected to repeated intimidation, ridicule, and insult or that "the office became unbearable" after she reported her allegations of discrimination to Human Resources, as she alleges in the Amended Complaint.  (Doc. 28 at ¶ 22).  Nothing in her EEOC charge suggests or even implies that she was subjected to a hostile work environment.  Therefore, to the extent that Kretzschmar now seeks to bring a hostile work environment claim pursuant to Title VII, she failed to exhaust her administrative remedies and the claim is due to be dismissed.

To the extent that Kretzschmar's hostile work environment claim has been brought pursuant to Section 1981, however, the court will allow the claim to

proceed.  In her Amended Complaint, Kretzschmar alleges more than just the discrete acts of her suspension, demotion, pay reduction, and ultimate termination; she also alleges that once she reported Burch's alleged discrimination, her employment was made "unbearable."  (Doc. 28 at ¶¶ 22, 26).  She allege that she was "treated differently" and "scrutinized constantly" and that Burch was "constantly telling [her] that she had an attitude" and "constantly trying to find reasons to write her up."  (*Id.*).  Although it is a close call, the court is satisfied that these allegations of repeated conduct, which suggest at least a degree of intimidation, are sufficient to state a plausible hostile work environment claim under Section 1981.  Of course, whether the allegations are borne out in discovery remains to be seen.

Accordingly, Birmingham East's motion to dismiss is due to be granted as to Count Four to the extent that Kretzschmar's hostile work environment claim arises under Title VII, but denied to the extend the claim arises under Section 1983.

## CONCLUSION

Based on the foregoing, Birmingham East's motion to dismiss (doc. 7) is due to be granted in part and denied in part.  The motion is due to be granted as to (1) any claims asserted under the ADA, the ADEA, or the FLSA; (2) any race discrimination claims in Count One based on any alleged discriminatory employment actions by Birmingham East other than Kretzschmar's suspension,

demotion, and pay reduction in July 2013; (3) any Title VII retaliation claims in Count Three based on alleged retaliatory acts commencing before Kretzschmar filed her EEOC charge on August 28, 2013; and (4) any Title VII hostile work environment claims in Count Four.  The motion is due to be denied to the extent that (1) Count One asserts a claim under Title VII and Section 1981 for race discrimination arising out of Kretzschmar's suspension, demotion, and pay reduction in July 2013; (2) Counts Two and Three assert a claim under Title VII and Section 1981 for retaliatory discharge; (3) Count Three asserts a claim under Section 1981 (but not Title VII) for retaliatory acts other than discharge; and (4) Count Four asserts a hostile work environment claim under Section 1981 (but not Title VII).

An appropriate order consistent with this opinion will be entered.

**DATED** this 27th day of October, 2015.

_____

**JOHN E. OTT**
Chief United States Magistrate Judge